[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Dover Court Condominium Association ("Association"), has instituted this action against the defendants, Shea Roofing Co. and Thomas Shea doing business as Shea Roofing Co. ("Shea"), alleging breach of a contract to perform certain repairs to the roofs of two of the five buildings which comprise the condominium development. In Count One of the complaint, the Association alleges that Shea agreed to perform certain repairs for a stated price but later announced the intention to perform lesser repairs. The Association claims that it refused to accept substitution of the lesser repairs and that the parties rescinded the contract but that Shea has failed to refund a partial payment paid by the Association.
In Count Two the Association alleges that Shea's failure to refund the partial payment has resulted in unjust enrichment.
In Count Three the Association alleges that Shea's failure to return the partial payment constitutes conversion.
The defendants raised as a special defense the claim that the Association breached its contract with them. The defendants have filed a counterclaim alleging that they incurred costs and expenses in partial performance of a contract with the Association and that they suffered money damages as a result of the Association's breach of that contract. CT Page 2809
The court finds the facts to be as follows. In 1986 the Association hired an architect, Donald Baerman, to recommend repairs to the roofs of the condominium buildings to stop existing leaks and to provide preventive maintenance. In a report dated September 27, 1986, Baerman recommended that the Association depart from the existing flat roof construction and instead hire a roofer to remove the entire flat roofing systems down to its plywood structure and have a new surface applied, using tapered or terraced insulation to create a slight slope down to the drains.
Shea, who was often called in by Baerman to bid on projects in which Baerman had been consulted, sent the president of the Association a letter in November 1986 offering to do the work set forth in Baerman's report for $92,400.00.
The Association did not proceed with the repairs in 1986. In 1987 or early 1988, the Association hired Shea to do some temporary repairs to the roofs. Those repairs are not at issue.
In 1988, Margolis Realty had become the managing agent for the Association, and after the completion of the temporary repairs Wendy Reed of that agency discussed with Shea the Association's desire to do further roof repairs in stages because of the Association's lack of funds to do all of the work at that time.
On June 15, 1988, Shea wrote Reed a letter "to confirm our discussion of 6/13/88 regarding which roofs to do immediately." The letter set forth bids for the first two roofs to be repaired and for the subsequent parts of the project. On June 17, 1988, Shea sent Reed another letter setting forth "the specifications regarding the reroofing project at Dover Courts [sic] Condominiums." These specifications did not adopt the specifications in Baerman's report but provided for removing the existing roofing and applying one layer of fiberglass laminated fiberboard to the existing wood decks with fasteners, then applying a layer of bitumin and coating it with aluminum. No evidence was presented to establish whether Reed, as agent for the Association, noted that the specifications differed from those in the architect's report. On August 10, 1988, she accepted the defendant's proposal to re-roof two buildings according to the specifications set forth in the June 17 letter at a price of $34,800.00.
On September 7, 1988, Margolis Realty issued a check to Shea in the amount of $8,000.00 as a deposit for the work. On September 23, 1988, after Shea had brought materials to the work site but before work had commenced, the Association had a meeting at which it repudiated the contract entered into by Reed on its behalf. Subsequently, the Association had Baerman draw up specifications for repairs of a nature less costly than the CT Page 2810 original plan but more to the Association's liking than the specifications provided by Shea. Shea was not the successful bidder on that project, and he removed his materials from the roofs of the two buildings.
The Association presented no evidence to establish that Reed was without authority to enter into a contract for the roofing, and she had apparent authority to do so on behalf of the Association as the employee of Margolis Realty assigned to handle the maintenance of the condominium development. As a general rule, a principal is bound by contracts executed by an agent if it is within the agent's authority to contract on behalf of that principal, as was the case here. E. Paul Kovacs Co. v. Alpert,180 Conn. 120, 125 (1980); Hollywyle Assn., Inc. v. Hollister, 164 Conn. 389, 396 (1973).
By refusing to make further payments or to let the work proceed in accordance with the contract entered into by its agent, the plaintiff breached the contract and is liable to Shea for the reasonable value of his efforts up to the time of repudiation. Simonetti v. Lovermi, 15 Conn. App. 722, 725 (1988) or to the damages suffered as a consequence of the plaintiff's breach. Bertozzi v. McCarthy, 164 Conn. 463, 468 (1973). Shea claims that the entire $8,000.00 deposit should be retained by him because of losses he suffered as to 1) loss of the materials, 2) cost of taking the materials to and from the job site, and 3 ) loss of other business. The evidence presented supports his claims only in part. roofing materials at issue were reusable on other jobs and that Shea therefore suffered no loss from their purchase. Shea did, however, incur labor costs, and it paid to rent a crane or "boom truck" to hoist the materials to the roofs. The defendant has offered no documentary evidence to support his testimony as to the number of workers and hours needed to put the material up and then to remove it. Finding Shea's estimates not to be credible in view of other testimony in which he overestimated what he had supplied, the court relies on the expert testimony of Mr. Gins, who testified that these operations as a whole (as to both deposit and removal) would take a total of four hours for a crew of three, or twelve hours, at a cost of $300.00. The court further finds that the defendant incurred an expense of $300.00 to rent the boom truck and that he is therefore entitled to retain $600.00 of the $8,000.00 which he has received. While Shea testified that he has lost other work as a result of reserving his crew to complete the contract with the plaintiff, he failed to prove that anything more than an opportunity to bid had been foregone.
As to the remainder of the deposit, the plaintiff has established that the defendants were unjustly enriched by their retention of the full deposit, and it is entitled to recover CT Page 2811 $7,400.00 from the defendants.
Judgment shall enter in favor of the plaintiff to recover from the defendant $7,400.00 as to Count Two of the Complaint. Judgment shall enter in favor of the defendants as to Counts One and Three of the complaint.
Judgment shall enter in favor of the defendants to recover $600.00 as to their counterclaim. This recovery shall be limited to retention of $600.00 of the amount previously received from the plaintiff's agent.
The plaintiff shall recover its costs.
BEVERLY J. HODGSON